VAN NOY INTERSTATE CO. *v.* TUCKER.

[87 South. 643.    No. 21686.]

BAILMENT.    *Limitation on liability must be brought to owner's attention by bailee of baggage.*

Where baggage is checked by a company and the same is lost, the company is liable for its loss, and any contract limiting the liability of the company must be brought to the attention of the owner.

Appeal from circuit court of Hinds county.

Hon. W. H. Potter, Judge.

Action by Hugh Tucker against Von Noy Interstate Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Wells, May & Saunders,* for appellant.

The question for this court to pass upon is one of first impression in this court so far as our investigation has enabled us to determine, and is this: Is the appellant protected by the limitation of liability endorsed on the check which was given to the appellee as evidencing the contract of bailment when the appellee deposited his suit case with the appellant?

Our contention is that the check is a good contract, one that it was competent for the parties to make, and that it affords protection to the appellant. If we are correct in this, the plaintiff was entitled to a judgment for ten dollars. And if this view is correct, of course, the judgment of the court below is wrong.

It is shown by the statement of facts on which the case was tried, that the appellant conducts a news stand and check room at the union Station in the city of Jackson, and that its facilities for handling the business is necessarily limited. Through some oversight or inadvertence, or by means of some outside agency the plaintiff's suit case was lost, mislaid or stolen. There was some one in charge of the place of business continuously from the time the suit case was delivered until it disappeared, and the possibility is that through some sort of oversight, the suit case was delivered to the wrong person. At any rate the agreed facts show that the appellee stands convicted of simple negligence, rendering it liable to the appellee in some amount. The claim check which was delivered to plaintiff, and which constituted a contract of bailment, as we contend, had printed in large type on the back, these words:

To The Holder Of This Check:

"The Van Noy Interstate Company restricts its liability to a value of ten dollars which upon acceptance of this check is agreed upon. Penalty for loss of check fifty cents."

The charge for service rendered by the appellant, was the trifling sum of ten cents, plus ten cents for each twenty-four hours, or fraction thereof during which the suit case should remain in its possession. As we have stated, the question, therefore, squarely presented, is this:

Is the appellant liable for more than ten dollars the value limit on the check? We submit that the question is answered in the negative by the overwhelming weight of authority. The several phases of the question have been considered by the courts and textwriters of which we subjoin a selected list which seems to be squarely on the point presented, and which, we believe, sustains our contention.

It may be conceded that the bailee or warehouseman, may not contract against and limit his liability for fraud, or gross negligence, amounting to fraud, but the rule seems to be fairly well established that a private warehouseman; that is to say, one not classed as a public utility, and not regulated by law may, by contract fairly entered into, and expressly stipulated, limit his liability, and such limitation will be sustained, except in case of fraud, or gross neglect amounting to fraud. *Marx* v. *New Orleans Cold Storage Co.,* 90 Am. St. Reports. 285.

"Ordinarily by mutual agreement, the rights and liability of bailor or bailee may be restricted or enlarged at will. It is important to observe that the parties are not permitted to contract in contravention of positive law, or of public policy so as, for instance, to exempt a bailee from liability for a loss occurring through fraud or want of good faith, and it seems that they may not relieve themselves from the result of their own gross negligence." 3 R. C. L., par. 30, page 106.

It has been said by good authority that the bailee might contract not to be liable for any degree of negligence not amounting to gross negligence. Story on Bailments, sec. 32; Schouler on Bailees & Carriers, sec. 20.

A warehouseman may contract for a more restricted liability than that which the law imposes upon him; he may by agreement restrict his liability except as to loss occurring through fraud or want of good faith. *Gashweiler* v. *Wabash R., etc., Co.,* 53 Am. St. Rep. 563.

The court cites certain cases to support the rule stated and cites Story on Bailments (9 Ed.) section 79. Again the court said: "The right to limit its liability (is) a right beyond question, if it was a warehouseman." There is no principle in our law that would prevent a depositary from contracting not to be liable for any degree of negligence in which fraud was really absent. Story on Bailment, section 32.

The maxim of our jurisprudence is that *modus et convetio vincunt legem,* and it applies to all contracts not offensive to sound morals or to positive prohibition by the legislature. Story, *supra.*

The legal responsibility of the bailee (except perhaps in the case of common carriers) may be narrowed by any special contract, either express or implied so it may in like manner be enlarged. Story, section 33.

The rule of the civil law is on this point conformable to ours. Story, section 34.

"Effect of clause or notice limiting liability. The majority of cases hold that while a carrier who accepts baggage in its parcel room on payment of a fee is liable for ordinary negligence, the bailor or depositor is presumed to have knowledge of a conditional or stipulation printed on the duplicate parcel check, limiting the carrier's liability to a sum stated thereon, and is bound by the provisions printed on the check." *Terry* v. *Southern R. Co.* (1908), 81 S. C. 279, 18 L. R. A. (N. S.) 295, 62 S. E. 249; *Van Toll* v. *Southeastern R. Co.* (1862), 12 C. B. (N. S.) 75, 142, Eng. Reprint, 1071, 8 Jur. (N. S.) 1213, 31 L. J. C.

P. (N. S.) 241, 6 L. T. (N. S.) 244, 10 Week. Rep. 578; *Harris* v. *Great Western R. Co.* (1876), L. R. 1 Q. B. Div. (Eng.) 515, 45 L. J. Q. B. (N. S.) 729, 34 L. T. (N. S.) 647, 25 Week. Rep. 63; *Pratt* v. *Southeastern R. Co.* (1897), 1 Q. B. (Eng.) 718, 66 L. J. Q. B. (N. S.) 418, 76 L. T. (N. S.) 465, 45 Week. Rep. 503; *Lyons* v. *Caledonia R. Co.* (1909), S. C. 1185, 46 Scot. L. R. 848; *Pepper* v. *Southeastern R. Co.* (1868), 17 L. T. (N. S.) (Eng.) 469; *Skipwith* v. *Great Western R. Co.* (1888), 59 L. T. (N. S.) (Eng.) 520; *Henderson* v. *Northeastern R. Co.* (1861), 9. Week. Rep. (Eng.) 519, 4 L. T. (N. S.) 216; *Dorin* v. *Grand Trunk R. Co.* (1917), Rap. Jud. (Quebec) 53 S. C. 106; Compare *Parker* v. *Southwestern R. Co.* (1877), L. R. Q. C. P. Div. (Eng.) 416, 46 L. J. C. P. (N. S.) 768, 36 L. T. (N. S.) 540, 25 Week. Rep. 564.

In *Terry* v. *Southern R. Co.* (1908), 81 S. C. 279, 18 L. R. A. (N. S.) 295, 62 S. E. 249, it appears that the plaintiff checked a suit case at the defendant's parcel room, receiving a receipt therefor, containing the following stipulation: "The party accepting this check hereby agrees, in consideration of the low rate at which it is issued, that no claim in excess of ten dollars shall be made against the railroad company for loss of or injury to any package, valise or other article which may have been deposited with it, and for which this ticket has been issued." The suit case having been lost while in the possession of the bailee, the court held that the defendant was clearly liable for its negligence, but that its liability was limited to ten dollars as stated in the receipt.

In *Van Toll* v. *Southeastern R. Co.* (1862), 12 C. B. (N. S.) 75 142 English Reprint, 1071, 8 Jur (N. S.) 1213, 31 L. J. C. P. (N. S.) 241, 6 L. T. (N. S.) 244, 10 Week. Rep. 578. It appeared that a passenger deposited a bag containing certain valuables in the defendant's cloak room, maintained for that purpose at its depot, and, on payment of a small charge received in return a receipt, which contained thereon a stipulation printed in large type, to the effect that the company would not be responsible for arti-

cles of value in excess of ten dollars. The court held, it appearing that the bag and its contents amounted to more than the sum specified, that the defendant was not liable for the loss, as the plaintiff, bailor was bound by the terms printed on the check, she being presumed to know the provisions thereof. See to the same effect *Henderson* v. *Northeastern R. Co.* (1861), 9 Week. Rep. (Eng.) 519, 41 L. T. (N. S.) 216.

In *Harris* v. *Great Western R. Co.* (1876), 45 L. J. Q. B. (N. S.) (Eng.) 729 L. R. 1 Q. B. (Div.) 515, 34 L. T. (N. S.) 647, 25 Week Rep. 63, wherein it appeared that the plaintiff deposited her luggage in the defendant's cloak room and received a check which stipulated that it was issued and received subject to certain limitations of liability printed thereon, the court held, that, although the plaintiff had not read the conditions printed on the receipt, it must be presumed that she deposited her luggage subject thereto and that, not having complied therewith, she could not recover the value of her baggage.

In *Pratt* v. *Southeastern R. Co.* (1897), 1 A. B. (Eng.) 718, 66 L. J. Q. B. (N. S.) 418, 76 L. T. (N. S.) 465, Week. Rep. 503, the court held that a provision on a parcel check, to the effect that the company designated value, meant that it would assume no liability for an article exceeding that value, and that the provision "was a good defense to an action to recover damages for an injury to an article of greater value than that stipulated in the check. See to the same effect *Skipwith* v. *Great Western R. Co.* (1888), 59 L. T. (N. S.) (Eng.) 520, where in the article deposited was lost by misdelivery to another person.

We respectfully submit upon the authorities hereinbefore cited, the demurrer to the declaration ought to have been sustained and the suit ought to have been dismissed, and certainly it was error for the court to render judgment for more than ten dollars.

The special plea (record page ———), setting up the fact that the contract of bailment limited the liability to ten dollars was abundantly established by the agreed state-

ment of facts, viz. That there was no contract between the parties other than which was evidenced by the check. We call the court's attention particularly to this clause in the agreement: "The said suit case was placed on the platform or counter aforesaid and a check was attached thereto, and the duplicate attached and delivered to said Hugh Tucker in exchange for the sum of ten cents. The said duplicate check so delivered to the said Hugh Tucker being filed as Exhibit A to the plaintiff's declaration, and made a part of this agreement."

There was no conversation between the agent of the defendant and the plaintiff regarding the transaction of checking said suit case, and the plaintiff after receiving said check, without reading it or actually knowing its contents, placed it in his pockets and went about his affairs.

The said agreed statement of facts therefore shows that the check was attached to the suit case and exchanged with the plaintiff for a fee of ten cents; that there was no conversation or other negotiations between the plaintiff and defendant's agent.

We submit that it thus clearly appears that if the appellee had any contract at all, that contract is evidenced by the check, and the check limits the liability of the appellant to ten dollars. If the check did not evidence the contract, then there was no contract, and there is no liability. If it does evidence the contract and if it does render the appellant liable, it must be treated as an entire thing, because the appellee cannot depend and rely upon that part which is favorable to him and reject the provision which is favorable to the appellant. The authorities which we have cited clearly demonstrate that the acceptance of this instrument of writing, without reading its contents, will not enable the appellee to set up a claim of ignorance to avoid the contract; and this court has frequently ruled that a receipt in common form containing the terms of a contract, is something more than a mere receipt, and is binding on the parties, and the limitation of liability will be enforced. See *Express Company cases,*

cited *supra,* and the rule quoted from R. C. L. And other decisions cited *supra.*

We submit, both upon reason and authority that the judgment of the lower court is wrong. For the court to hold that appellant is liable to the appellee in excess of ten dollars would be for the court to decline to enforce the contract which the parties made for themselves, and to make a new contract at the instance of the bailor, the appellee, without the consent and over the protest of the appellant, who was the bailee.

The court may think the contract is a hard one from the standpoint of the appellee, but the court should bear in mind that for the service rendered, the appellant received but the trifling sum of ten cents, and it was but the part of prudence for it to limit its liability. If the appellant should engage in the business of checking baggage sometimes of great value, and assume full liability therefor, receiving only a nominal compensation the small profits which it would make would clearly be greatly disproportioned to the hazard which it would assume.

*Robt. Powell,* for appellee.

It is claimed by the appellant as a defense in this case that the claim check copied above was a contract between the parties which they had a right to make and which limited the liability of appellant to the sum of ten dollars, and that therefore the suit having been brought in the circuit court the amount involved was not within the jurisdiction of that court and the judgment should have been for the defendant in the court below. Our contention is:

First. That the claim check was not a contract between the parties, but was simply an identification card that the real contract between the parties was an implied one arising out of the transaction.

The court will see further from an examination of the check that it does not claim to be any thing more than an

identification card for it says itself it is a "claim check" only.

Second. We claim that if the claim check was a contract then its limitation of liability was not binding, because it was not given with the full knowledge on our part of its contents. This is agreed to be true in the agreed statement of facts.

We cite the court on this point to *Southern Express Company* v. *R. A. Moon,* 39 Miss. 822, and *Mobile & O. R. R. Co.* v. *Franks,* 41 Miss. 494, in which this court says: "If a contract by which a common carrier limits its liability is under any circumstances binding, it is essential to its validity that the assent of the shipper should be express and upon a sufficient consideration and to be freely and fairly given with the full knowledge of the contract and the rights thereby waived and that it should not be obtained by fraud and the circumstances not favorable to full understanding of the force and effect of the contract, and it was further said that the exception would be strictly construed against the carrier and that it will never be extended so as to relieve him from responsibility for the loss occasioned by his negligence and moreover the *onus* is on the carrier to show that the loss was within the exceptions."

This case seems to cover the case at issue like a wet blanket.

Third. We say that if this claim check is a contract, then it was a contract to relieve the company from its own negligence and consequently void. We quote from the opinion of this court in *Southern Express Co.* v. *R. A. Moon,* 39 Miss. 822: "Exceptions in a common carrier's receipt, limiting his common-law responsibility are strictly construed against the carrier and are never extended to relieve from responsibility for a loss occasioned by its own negligence." See, also, *Express Co.* v. *Marks & Rothenberg,* 87 Miss. 659; *So. Express Co.* v. *Seile,* 67 Miss. 609.

"A common carrier cannot stipulate against liability for the loss occasioned by it negligence. *New Orleans R. R. Co.* v. *Faler,* 58 Miss. 911; *Mobile & O. R. R. Co.* v. *Weiner,* 49 Miss. 725; *Chicago R. R. Co.* v. *Moss,* 60 Miss. 1003.

It is true that the authorities heretofore cited in this brief are those in cases of contracts against negligence by common carriers. We can see no reason why the same principle should not apply to the business conducted by appellant in this case, although we believe that the precise point has never been adjudicated in this state.

In the particular case before the court in the hurry of travel the appellee left his baggage with appellant and after it was received the claim check in question was shoved out to him and he put it in his pocket he not dreaming that he was parting with his property under an agreement not to demand more than ten dollars in case of its loss, and when appellee called for his baggage no excuse whatever was given why it was not returned to him and no explanation attempted in regard to the same.

If the appellant could escape liability under such circumstances it would look like offering a premium to dishonest parties to appropriate valuable baggage and pay only a trifling amount for its loss. If a scheme of this kind were legal it would be a bonanza to unscrupulous parties.

But should we concede every point made by appellant in its brief we are still entitled to recover for the reason that the appellant in this case was guilty of gross negligence in dealing with the property in question for at least the jury or the court sitting as a jury had the right to infer gross negligence because appellant utterly failed to give any excuse for failing to redeliver the valise to appellant when called for. We cite the court on this point to the cases of *Sternberger* v. *Western Union Telegraph Company,* 97 Miss. 260; *Telegraph Cable Co.* v. *Christian,* 102 Miss. 851.

The court will observe that all of the authorities cited by appellant in its brief contracts of this character are

void where there is gross negligence.   For these reasons
we think the judgment of the court below was correct and
should be affirmed.

SAM C. COOK, P. J., delivered the opinion of the court.

This is a suit for the value of a suit case and its con-
tents, delivered to the appellant as a bailee for hire.   The
case was submitted to the trial judge without the aid of a
jury upon the following agreed statement of facts, viz.:

"It is agreed between the parties hereto that this cause
may be heard and determined by the trial judge without
the aid of a jury on the following agreed statement of
facts:

"The defendant, the Van Noy Interstate Company, is
engaged, among other things, at Jackson, Miss., in con-
ducting what is called 'a parcel check room' where small
parcels are checked for a small consideration paid in each
instance; that said business of conducting a parcel check
room is carried on in the southwest corner of the general
waiting room in the Union Station, the space occupied by
the said defendant in connection with said business being
approximately ten feet square.   The manner of carrying
on the business of checking parcels is as follows: A per-
son, desiring to deposit a parcel with the defendant for
temporary keeping, presents the parcel to the defendant at
said place, there being a small platform or counter upon
which it is customary for suit cases or other parcels to be
placed, whereupon the defendant attaches to the said par-
cel a pasteboard check, which is made in duplicate, and
from the check so attached to the parcel the duplicate is
detached and delivered to the person checking the parcel
in exchange for the fee charged for such checking service,
which is ten cents for each parcel, and the duplicate check
so delivered is presented by the holder for the purpose of
obtaining the parcel so checked when it is desired to take
the parcel from the check room.

"On the 8th day of May, 1920, the plaintiff, Hugh Tucker, presented to the defendant to be checked a certain suit case and contents of the agreed value of two hundred fifty dollars, and the said suit case was placed on the platform or counter aforesaid, and a check was attached thereto, and the duplicate detached and delivered to the said Hugh Tucker in exchange for the sum of ten cents. The duplicate check so delivered to the said Hugh Tucker being filed as Exhibit A to the plaintiff's declaration and made a part of this agreement. There was no conversation between the agent of the defendant and the plaintiff regarding the transaction of checking the said suit case, and the plaintiff after receiving said check without reading it, or actually knowing its contents, placed it in his pocket and went about his affairs until some time within the twenty-four hours next ensuing, when he returned to the defendant's place and presented the said check and demanded the return of his said suit case. The defendant did not return the said suit case which was not found in the defendant's premises, and which had disappeared therefrom in some way and manner unknown both to the plaintiff and the defendant and the defendant's employees. There was an agent of the defendant in charge of the said check room continuously from the time the said suit case was so delivered until the plaintiff presented his check and demanded the delivery to him of the said suit case. The said check room where the said suit case was deposited is used also for keeping miscellaneous small articles for sale, and has a window on the west side, which opens out on the station platform, and another on the south side, which opens on the station platform on the south side, through which windows it is possible to make delivery or parcels checked and other articles. Said west window is commonly used for that purpose, but the south window is seldom used for that purpose. The most of the business of receiving and delivering parcels and selling other small articles is transacted over the counter or platform on the inside of the

waiting room, at which place the plaintiff's suit case was checked."

The check referred to in the agreement of facts had printed on it the following:

"Claim check. See other side.

10 cents for each 24 hrs. or fraction thereof

10   20   30   40   50

60   70   80   90   1.00

"No. 3145."

The circuit judge adjudged the defendant liable for the actual value of the suit case and its contents, and defendant appeals.

We have made quite a search for authorities applicable to the facts of this case, and we have but one decision which we deem decisive of this appeal. The authorities generally lay down the rule that bailees for hire are ordinarily liable for the value of goods or other things lost, and any limitation of that rule must be brought to the attention of the owner of the goods. So we think the question here is, Was the bailor advised of the limitation written upon the pasteboard check delivered to the owner of the suit case?

In a case decided by the Appellate Division of the Supreme Court of New York, *Healy* v. *N. Y. C. & H. R. R. Co.,* 153 App. Div. 516, 138 N. Y. Sup. 287, in a case very much like the case made by this record, had this to say, viz.:

"The coupon was presumptively intended as between the parties to serve the special purpose of affording a means of identifying the parcel left by the bailor. In the mind of the bailor the little piece of cardboard, which was undoubtedly hurriedly handed to him and which he doubtless as hurriedly slipped into his pocket, without any reasonable opportunity to read it, and hastened away without any suggestion having been made upon the part of the parcel room clerk as to the statements in fine print thereon, did not arise to the dignity of a contract by which he agreed that in the event of the loss of the parcel, even

through the negligence of the bailee itself, he would accept therefor a sum which perhaps would be but a small fraction of its actual value.

"The plaintiff having had no knowledge of the existence of the special contract limiting the liability of the defendant to an amount not exceeding ten dollars, and not being chargeable with such knowledge, the minds of the parties never met thereon, and the plaintiff cannot be deemed to have assented thereto, and is not bound thereby."

We adopt the decision of the New York court as the law of this case.

*Affirmed.*