John P. Crosby, Plaintiff, *v.* 20 Fifth Avenue Hotel Co., Inc., 49th St. & Madison Ave. Corp. and New Weston Annex Corp., Defendants.*

Municipal Court of New York, Borough of Manhattan, Fourth District, March 3, 1939.

*Harold Green,* for the plaintiff.

*Edward Morrison,* for the defendants.

WHALEN, J.    Plaintiff was a guest at a hotel operated by one of the defendants.    On July 29, 1932, he paid his bill in full and departed, leaving two trunks in storage at the hotel and receiving two checks or receipts.    No charge was made for storage.    On November 11, 1934, he returned to the hotel, stated to the desk clerk that he had lost his billfold containing the two trunk checks and received two new checks to replace those lost.    These were received in evidence as plaintiff's exhibits and read as follows:

---

* Modfd. and affd., 173 Misc. 604.

(Front)

" Trunk Room Stub

" No. 4412

" Hotel New Weston
34 East 50th Street
New York

" Date Rec'd                                                    11–11–34
" Article                                                      Wardrobe Tk
" Date Delivered                                                  Crosby

" Read Carefully Contract on
Reverse side Releasing Liability."

(Reverse)

" Contract Releasing Liability

" In consideration of the receipt and free storage for one day of the property for which this check is issued, it is agreed by the holder in accepting this check, that the hotel shall not be liable for loss of or damage to, said property by water, fire, theft, moth or any other cause, either as a result of the ordinary or gross negligence of the hotel or its employees, or otherwise.

" If property represented by this check is not claimed within six months, the hotel may sell same without notice, at public sale.

" Hotel is authorized to deliver said property to any person presenting this check, without identification."

He did not return again to the hotel until on or about March 18, 1937, when he presented his checks and asked for his trunks. He was informed by the manager that they had been sold. Plaintiff sues in conversion for the value of the trunks and their contents.

Defendants in their answer plead in addition to what is practically a general denial, as affirmative defenses:

(1) That the trunks were duly sold as unclaimed baggage pursuant to the provisions of sections 207 and 209 of the General Business Law.

(2) A limitation of liability under section 200 of the General Business Law.

(3) A limitation of liability under section 201 of the General Business Law.

Defendants have withdrawn from consideration the second affirmative defense. The third affirmative defense must also be eliminated for the reason that there was no evidence offered to show compliance with section 201 with respect to the posting of notices. (*Millhiser* v. *Beau Site Co.*, 251 N. Y. 290.)

Defendants claim that a notice on the registration card is sufficient compliance with the statute, but it has been held that that sort of notice is not sufficient. (*Featherstone* v. *Dessert*, 173 Wash. 264; 22 P. [2d] 1050.)

In explanation of the failure to return the trunks defendants introduced evidence to show that on November 12, 1936, plaintiff's two trunks had been sold at public auction after one publication in a newspaper of a notice as required by statute (Gen. Business Law, § 207), and after mailing a notice of the sale to the plaintiff addressed to him at " 25 East 26th Street, Union Club." The hotel manager testified that at the time preparations for the sale were being made the hotel did not have plaintiff's address, his registration card containing his name and address having been destroyed about October 1, 1933, the reason being that circular letters to former guests, including plaintiff, describing activities of the hotel, had been returned from the post office undelivered. He had procured the address " 25 East 26th Street, Union Club," by breaking open plaintiff's trunk and taking the address from a letter he found there. Plaintiff testified he never lived at nor was he ever connected with the address 25 East Twenty-sixth street and that the Union Club had never been located there. Plaintiff introduced into evidence the envelope and inclosed notice of sale, which concededly had never reached plaintiff but had been returned promptly to the hotel by the post office and has been in its possession ever since.

Upon the foregoing state of facts I am satisfied that the relationship involved herein is not that of innkeeper and guest, upon which theory the case was tried, but that of bailor and bailee and the bailment was a gratuitous one. (*Waters* v. *Beau Site Co.*, 114 Misc. 65; *Dalton* v. *Hamilton Hotel Operating Co., Inc.*, 242 N. Y. 481; Schouler, Bailments [1905 ed.], p. 128; *Bean* v. *Ford*, 65 Misc. 481.)

A gratuitous bailee has the duty of exercising slight care and is liable only for what is termed gross negligence. At common law a gratuitous bailee had no right to sell the bailor's goods without the bailor's consent. If he did so he was guilty of a conversion. (*Dale* v. *Brinckerhoff*, 7 Daly, 45.) If he desired to terminate the bailment it was his duty to notify the bailor and request him to remove the goods, and even after such a request, if the bailor failed to take away the goods, the bailee could not sell them. It was his duty to place the goods in storage and duly notify the bailor. Thereafter the warehouseman could sell after notice for his storage charges.

By selling plaintiff's trunks defendants have been guilty of a conversion unless absolved by some statute or by a special contract. Defendants have not pleaded a special contract, but inasmuch as plaintiff introduced in evidence the trunk checks and his rights flow from them they are before the court and he is bound by the special contract indorsed thereon if it is to be given effect.

In one way this transaction is differentiated from the ordinary gratuitous bailment. Inasmuch as the bailed goods were left in the custody of an innkeeper by a former guest the bailment may be controlled by section 207 of the General Business Law which gives the hotel the right to sell unclaimed chattels at auction upon compliance with a certain prescribed procedure.

Whether or not this statute controls is dependent upon the question as to whether these trunks thus left in the hotel custody may be deemed "unclaimed chattels." Section 207 of the General Business Law was amended by chapter 229 of the Laws of 1936, in effect April 3, 1936, in a way that vitally affected the situation of these parties, and now has an important bearing on plaintiff's claim.

Prior to the amendment the section so far as material read: "Not less than fifteen days prior to the time of the sale, a notice of the time and place of holding the sale, and containing a brief description of the goods, baggage and articles to be sold, shall be published in a newspaper published in the city or town in which such hotel, apartment-hotel, inn, boarding house or lodging house is situated; but if there be none, then in such newspaper published nearest such city or town; and such notice shall also be mailed to said guest, boarder or owner of such chattel articles and property directed to the address which he may have left with such keeper; if no address was so left, then such notice shall be mailed to said guest, boarder or owner, directed to the post office of the city or town in which such hotel, apartment-hotel, inn, boarding house or lodging house is situated; and if the place of residence of such guest, boarder or owner is known to such keeper, whether or not an address was left with such keeper, such notice shall be mailed to said guest, boarder or owner, directed to said place of residence; such notice shall be mailed in the manner aforesaid at least fifteen days prior to the time of sale."

The section as amended, so far as material, reads as follows: "If the name and address of said guest, boarder or owner of such chattel articles and property, appears upon the records of such keeper, such notice shall also be mailed to said guest, boarder or owner, addressed to such address; such notice shall be mailed in the manner aforesaid at least fifteen days prior to the time of the sale."

It will be observed that under the language of the section prior to amendment, notice was required to be mailed to the address left by the guest. It was, therefore, incumbent on the hotel to carefully preserve addresses of all departed guests who had left property in custody of the hotel. Under the statute, as amended, there seems

to be no requirement that any notice at all be sent to a guest whose address does not at that time appear on the records. So far as the language of the amended section goes, literally read, there is no duty placed on the hotel to retain such address for any period of time at all, even a single day. That is defendants' contention herein. They further contend that the only statutory duty now imposed on hotelkeepers to retain addresses of guests is that contained in section 61 of the Election Law, requiring that names and residences be left in a register for one year. This section relates to a special book or " register " to be kept by hotels as a restraint on fraudulent voting, and is something distinct from registration cards. A system of card registration is not a compliance with that section. (Op. Attorney-General [1935], p. 431.) This statute would seem to have no bearing on the question as to how long a hotelkeeper should retain the names and addresses of departed guests who have left chattels in the custody of the hotel. In the absence of statutory direction it becomes a question of ordinary good faith and reasonable care. Common sense would seem to require that a hotelkeeper assuming custody of property of a guest who has departed leaving his name and address would preserve that name and address carefully so long as he retained the property, and would have some tie-up made between the address and the stored articles. We cannot assume that the Legislature by this amendment intended to give hotelkeepers in such a situation the right to destroy a guest's registration card containing his name and address and then sell goods left by the guest without giving him any notice. The address referred to in the statute is the address as it " appears upon the records." The amended statute does not require the sending of notice to any other address, and the mailing of a notice to an address found on an old letter in a trunk is an entirely gratuitous and probably useless act. It is obvious that the requirement for publication of one notice of the sale in a newspaper is for the purpose of attracting the attention of prospective buyers who may be expected to look for such notices in the press, and not for the purpose of bringing home to the guest knowledge of the sale. In the city of New York, with the large number of newspapers published and their large size, there is slight probability of such notices coming to the attention of the ordinary person not actively interested in them. It seems to me that defendants should not be permitted to say that by their own act they removed plaintiff's name from their records and, therefore, that it became not only impossible but also unnecessary to send a notice to plaintiff at the address appearing " on their records." I am of the opinion, therefore, that even if we assume that these trunks were unclaimed chattels, defendants have

failed to show compliance with section 207 of the General Business Law and that their first defense falls. That eliminates all of the special affirmative defenses as pleaded and it becomes necessary to examine into the question as to whether or not defendants are protected from liability by reason of a valid special contract indorsed on the trunk checks.

The parties to a bailment may by special contract increase or decrease the liability of the bailee. (6 C. J. 1112.) A general statement often found is that a bailee may restrict his liability by an agreement not contrary to public policy and providing he does not attempt to exempt himself from the consequences of his own fraud or willful misconduct or gross negligence.

There is a provision on the reverse of the check in evidence that the " hotel shall not be liable for loss of or damage to said property by water, fire, theft, moth or any other cause, either as a result of the ordinary or gross negligence of the hotel or its employees, or otherwise."

Another provision is: " If property represented by this check is not claimed within six months, the hotel may sell same without notice, at public sale."

May a bailee exempt himself from liability for gross negligence? It appears that the courts in different States differ on this proposition. It becomes important here because I believe that defendants here were guilty of gross negligence, first, in destroying plaintiff's registration card when they knew or should have known that he had two trunks in the trunk room, and secondly, in selling the trunks without making any effort to correct their first error by making an attempt to preserve plaintiff's address by ascertaining the location of the Union Club after knowledge had been brought home to them that the address to which the notice had been sent was incorrect.

In *Dalton* v. *Hamilton Hotel Operating Co., Inc.*, (242 N. Y. 481) the Court of Appeals said that the suggested explanation for the failure to deliver plaintiff's trunk, namely, that it had been delivered to some one else, was evidence of gross negligence.

" There is no principle in our law that would prevent a depositary from contracting not to be liable for any degree of negligence, in which fraud is really absent." (Story, Bailments [9th ed], § 32.)

" But that generally gross negligence and fraud are convertible terms, is a doctrine not supported by just inference from the authorities in the common law." (Id. § 19.)

Story states that there is a possible exception in the right of special contract in the case of common carriers. (§§ 32, 33.)

In Edwards, Bailments ([3d ed.] p. 438) it is said: " The Courts of England and this State [New York] permit the carrier to exempt

himself by an express contract from liability for damages resulting from negligence on the part of his servants, agents, and employees, without regard to the degree of the negligence — a rule accepted with much reluctance and frequently criticized by the court that enforces it, and we may add, constantly qualified and restricted by the interpretations given to the contract."

In Schouler, Bailments ([1905 ed.] at the bottom of p. 21) appears the following note: " The universal limitation applies to a bailment, that the bailee shall not stipulate against responsibility for his own fraud and wilful misconduct; and it is further held that public policy will not permit even a gratuitous bailee to procure absolute immunity from the consequences of his gross negligence." (*Pattison* v. *Syracuse National Bank*, 4 Thomp. & C. 96.)

However, a reference to the record on appeal of the cited New York case will show that that case does not bear out the text. That was a case of an oral bailment at the bailor's " own risk." The trial judge expressly charged the jury that the words " at your own risk " would not excuse gross negligence of the bailee. The point as to whether or not a special contract exempting the bailee from liability for gross negligence if made would be valid was not raised in that case. An extended search has failed to reveal a case in any jurisdiction exempting a bailee from the consequences of his own gross negligence where a court has directly passed on the validity of such provision in a special contract.

The courts have manifested an intent to construe such claims strictly against the bailee, and not to allow the exemption to extend beyond the plain and clear meaning of the words. Thus " at your own risk " has been held to exempt common carriers from liability as insurers only and not from damage caused by negligence. (*Heuman* v. *Powers Co.*, 226 N. Y. 205.) The same rule was applied to an ordinary bailee in *Pattison* v. *Syracuse National Bank* (4 Thomp. & C. 96). In the *Dalton* case (242 N. Y. 481) there is a dictum to the effect that an exemption from negligence would not exempt from gross negligence.

Applying that rule of construction to this case, the exemption from " gross negligence " may not be extended to cover a case of conversion, such as is shown here if the sale was not authorized.

The clause giving the bailee the right to sell if the trunks were unclaimed after six months, however, seems to be clear and explicit, and is a bar to plaintiff's claim, if the special contract is effective.

Was the mere delivery and receipt of these checks under the circumstances disclosed in this record sufficient to cause the " Contract Releasing Liability " indorsed on the back to go into effect? There is nothing in the evidence to show whether or not the plaintiff read

this indorsement, or had his attention called to it or assented in any way to such a contract.

The only testimony as to the conversation that took place when the checks were delivered is that given by plaintiff. He testified that he spoke about taking his trunks out on November 11, 1934, when he received the duplicate checks and was told by the manager, " You don't have to do that. You can leave them here as long as you want to. You will be back some time." This was at a time when they had been there over two years. Taken in connection with the fact that the hotel kept the trunks two more years and even then did not attempt to sell under a right given by this clause, but apparently attempted to sell solely under the protection of the statute, it seems probable that neither party had this clause in mind.

The authorities differ on the question of whether or not the mere delivery and receipt of a check or receipt by a bailee with a special contract indorsed thereon is sufficient to make the special contract effective and also as to who has the burden of proof. There apparently is no New York case which decides this point flatly. Leading cases in which it was held there was no assent express or implied on the part of the bailor to a restrictive indorsement on a check given for baggage are: *Healy* v. *N. Y. C. & H. R. R. R. Co.* (153 App. Div. 516); *Blossom* v. *Dodd* (43 N. Y. 264); *Madan* v. *Sherard* (73 id. 329); *Morgan* v. *Wolverton* (203 id. 52).

A statement in *Galowitz* v. *Magner* (208 App. Div. 6) goes further than any of the others. In this case plaintiff left his car in a parking lot operated by defendant and received a ticket with an indorsement releasing from liability for loss. There the court said: " The disclaimer of liability could only become effective if brought to plaintiff's knowledge."

There is a line of common carrier cases holding that where a man habitually ships goods by express and gets a receipt out of a book kept by him containing a limitation of liability he is presumed to be familiar with the limitation and he is bound thereby. (*Braus* v. *Manhattan Delivery Co.*, 78 Misc. 371; *Jonasson* v. *Weir*, 130 App. Div. 528; *Bates* v. *Weir*, 121 id. 275.)

However, in a case where the wife of the habitual shipper sent a shipment and was given a receipt out of a book from which the cover containing a copy of the limitation had been torn off, it was held that she was not bound by it. (*Schwartz* v. *Fargo*, 145 App. Div. 574.)

The courts in other jurisdictions differ on the question, but the majority hold that unless the bailor's attention is called to a restriction of liability on a check he is not bound. To this effect are: *Denver Union Terminal R.* v. *Cullinan* (72 Colo. 248; 210 P.

602); *Union Bus Station* v. *Etosh* (48 Ohio App. 161; 192 N. E. 743); *Union Depot* v. *Ulrich* (22 Ohio N. P. [N. S.] 141); *Van Roy Interstate Co.* v. *Tucker* (125 Miss. 260; 87 So. 643); *Brown* v. *Hines* (213 Mo. App. 298; 249 S. W. 683); *Union News Co.* v. *Vinson* ([Tex. Civ. App.] 227 S. W. 236); *Dodge* v. *Nashville, C. & St. L. R.* (142 Tenn. 20; 215 S. W. 274); *Jones* v. *Great Northern R. Co.* (68 Mont. 231; 217 P. 673); *Lebkeucher* v. *Penn. R. R.* (97 N. J. L. 112; 116 A. 323). Burden on bailee to show that terms of the special contract were brought to attention of bailor: *Brown* v. *Eastern R. R. Co.* (11 Cush. [Mass.] 97); *American Laundry Co.* v. *Hall* (27 Ga. App. 717; 109 S. E. 676); *Goldstein* v. *Harris* (24 Ala. App. 3; 130 So. 313). Contra: *Terry* v. *Southern R. Co.* (81 S. C. 279; 62 S. E. 249); *Grace* v. *Adams* (100 Mass. 505); *Keenan Hotel* v. *Funk* (93 Ind. App. 677; 177 N. E. 364); *Cunningham* v. *Int. Com. Y. M. C. A.* (51 Cal. App. 487; 197 P. 140).

These last cited cases held that it is the bailor's duty to read the check or give a satisfactory explanation as to why he did not. But the great weight of authority is the other way, and I have found no New York case stating that doctrine.

In *Dalton* v. *Hotel Hamilton Operating Co., Inc.* (242 N. Y. 481), where checks given for trunks placed in storage contained a clause exempting the hotel from the consequences of its own negligence, the Court of Appeals did not have to pass directly on the question, assuming that even if the special contract had gone into effect it would not have sufficed to relieve the defendant. There the court said (at p. 489): " So far as concerns the exemption clause on the checks, *independent of any other answer,* we do not think it is to be assumed that it was the intention of the parties that it should relieve the defendant from its own gross negligence." (Italics supplied.)

After careful consideration of the facts of this case so far as shown by the testimony in the light of the authorities cited above I am of the opinion that the burden is on the defendants to show some assent on the part of the plaintiff to this special contract and that defendant has not met this burden either by pleading or proof and consequently the special contract did not go into effect.

Not being protected either by the statute or by any special contract, defendant is liable to the plaintiff for the conversion of the trunks and their contents.

Another difficulty arises in the question of damages. There is a rule that a bailee may not be held liable for loss of the contents of a bailed trunk or package where he had no reason to suppose it contained valuables such as jewelry. This rule is well explained in *Waters* v. *Beau Site Co.* (114 Misc. 65). This eliminates the jewelry in plaintiff's trunk.

Shortly prior to his last call at the hotel plaintiff had received a communication from a woman who had purchased a " silver porringer " from the purchaser of the trunk at the auction sale. This " porringer " was produced at the trial, had plaintiff's name on it, and testimony shows that it was made by a silversmith in New York named Ephraim Bracker sometime between 1756 and 1791. It bears his mark and also the numerals 1786. Testimony was given to the effect that this " porringer " has a market value as an antique of $500, and plaintiff testified that the " porringer " was a family heirloom and had been given to him when he was a child.

While the question as to the " porringer " may be a borderline one, I am inclined to think it is such an article as might be expected to be left in a trunk and does not come within the rule followed in the *Waters* case. A hotel guest could not be expected to keep such an article in his room. The uncontradicted testimony is that the " porringer " is worth $500 and I place that value on it. The other articles including the trunks, after eliminating all gifts and limiting the articles to those purchased by plaintiff himself, are estimated to be worth $75, making a total sum of $575, for which plaintiff is entitled to judgment, with interest from the time of the conversion.

The judgment will be against 20 Fifth Ave. Hotel Co., Inc., and 49th St. & Madison Ave. Corp. The complaint will be dismissed without prejudice as to the New Weston Annex Corp. inasmuch as the connection of that corporation with the transaction is not clear to me.